UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

MARGARET HAJJE,

    Plaintiff,

Vs.

SHERIDAN HEALTHCORP, INC. d/b/a
ENVISION PHYSICIAN SERVICES,
a Florida corporation,

    Defendant.
_____/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MARGARET HAJJE, hereby sues Defendant, SHERIDAN HEALTHCORP, INC., (hereinafter "ENVISION"), and alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1.    This action is instituted pursuant to the Family and Medical Leave Act 29 U.S.C. § 2601 et seq. (the "FMLA"), as amended, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. (the "ADA"), as amended, and the Florida Civil Rights Act, Fla. Stat. §760.01 et seq.,

2.    Jurisdiction in the United State District Court, Fort Lauderdale Division, is proper pursuant to 29 U.S.C. § 2617.

3.    Plaintiff is a citizen of the State of Florida and resides in Broward County, Florida, which is located in the Southern District of Florida. At all relevant

1

times to this Complaint, she was employed by ENVISION and worked at various hospitals in Broward County.

4. Defendant is a foreign corporation, which is authorized and qualified to do business throughout the State of Florida, including at various hospitals located in Broward County, within the Southern District of Florida.

5. At all times material to this Complaint, Defendant qualified as an employee as defined pursuant to 29 U.S.C. § 2611(4), 42 U.S.C. §12111(4), and the Florida Civil Rights Act.

6. Venue is proper in this Court, because all or substantial part of the events giving rise to Plaintiff's claims herein occurred in the Southern District of Florida, 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

7. Defendant provides physician services to hospitals, outpatient centers, and in office-based settings, and provides management services for physician practices.

8. At all times material hereto, ENVISION was an employer pursuant to 29 U.S.C. § 2611(4), 29 U.S.C. §12111(4), and Fla. Stat. §760.02(7), as it engaged in commerce or in an industry or activity affecting commerce, and who employed 50 or more employees for each working day during or in each of 20 or more calendar weeks in the current or proceeding calendar year.

9. Specifically, ENVISION conducts business, accepts and processes payments by patients and insurance carriers, purchases medical supplies, and provides and supports physician services among and across several states.

10. As such, ENVISION was prohibited from interfering, discharging, or in any other manner discriminating against any employee who has used FMLA leave, 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c).

11. Further, ENVISION was prohibited from discriminating against Ms. Hajje on the basis of her disability. 42 U.S.C. §12112(a); Fla. Stat. §760.10(1).

12. Ms. Hajje began working for ENVISION on July 2, 2018, as an Anesthesiology Assistant.

13. Ms. Hajje had a disability as she suffers from narcolepsy, which is a physical impairment that substantially limits her major life activity of sleeping, among others.

14. On August 8, 2020, Ms. Hajje underwent emergency surgery for her endometriosis and ovarian cysts.

15. Following her surgery, Ms. Hajje was released to return to work with ENVISION on August 24, 2020.

16. While she reported to work as scheduled until August 27, 2020, on August 27, Ms. Hajje suffered from a severe allergic reaction and panic attack in response to her being prescribed a new, too-strong birth control that led to a sudden and unexpected hormonal imbalance.

17. Ms. Hajje thus requested leave on August 28, 2020.

18. Ms. Hajje fully confided in Dr. Water Diaz, Chief of Anesthesiology at Memorial Hospital West, about her medical issues, including Ms. Hajje's narcolepsy as well as her aforementioned health struggles.

19. Following a series of medical health dilemmas in which Ms. Hajje utilized two days off guaranteed to her as Florida Medical and Leave (FMLA) benefits, on September 8, 2020, Ms. Hajje reported to work.

20. At this point, Dr. Diaz sat her down to discuss the future of Ms. Hajje's employment with the company, suggesting Ms. Hajje accept a per diem position due to her medical condition.

21. Due to the stressful nature of this conversation, Ms. Hajje's hives worsened, but she returned to work in the operating room with extreme concerns about missing further work at the expense of her position.

22. Following Dr. Diaz's conversation with Ms. Hajje on September 8, 2020, Mr. Yusuf Siddiqui, Practice Manager, responded via phone to Ms. Hajje's text message inquiries regarding her FMLA benefits and benefits under per diem employment.

23. Mr. Siddiqui apologized on Dr. Diaz's behalf, stating it was not a necessary talk and was delivered in an insensitive manner.

24. Furthermore, Mr. Siddiqui apologized because Ms. Hajje was not "flagged" by human resources for missing work.

25. Mr. Siddiqui assured Ms. Hajje that there were no concerns for Ms. Hajje's future with the company, and that she should not worry.

26. Ms. Hajje attempted to follow up with Dr. Diaz about how she did not believe per diem employment was the right option for her, but Dr. Diaz stated he would not discuss this with her any further, dismissing her concerns.

27. In the ensuing week, Ms. Hajje was confronted with multiple health complications originating in her surgeries, medication, and narcolepsy, but was communicative with her supervisors about utilizing her guaranteed FMLA benefits to attend doctors' appointments.

28. Unfortunately, on September 14, 2020, due to her narcolepsy, stress, and adverse reactions to her prescribed medications, Ms. Hajje succumbed to exhaustion and fell asleep in the employee call room.

29. At the time, her assignment, as per the employee schedule, was to simply be available in case another employee needed to take a break.

30. Her assignment thus consisted of no task other than sitting and waiting, which she performed for several hours in the call room until succumbing to her narcolepsy.

31. Most importantly, she was not performing any active duties—she certainly was not with patients, in the operating room, or in any capacity acting with anesthesia.

32. Importantly, at the time of this incident, Ms. Hajje had ADA accommodations for her narcolepsy allowing her to take 20-minute naps during working hours, and indicating that her employer had been notified of her disability.

33. Ms. Hajje's supervisor, Dr. Diaz, was well aware of Ms. Hajje's medical condition and disability that led to the incident.

34. When she awoke, Ms. Hajje notified Dr. Diaz of what had occurred, and was transparent about the stressors triggering her narcolepsy.

35. She returned to her break-giving duty, and at 6 p.m. was notified that she could return home early if she was not feeling well.

36. On September 16, 2020, Dr. Diaz called Ms. Hajje into a meeting, insisted that she list all of her medications, and ordered her to take a drug test.

37. When Ms. Hajje protested on the grounds of no cause, Dr. Diaz stated he knew she did not have a drug problem but that human resources was requiring this due to her sleeping and missing work.

38. Despite Ms. Hajje's ample evidence and documentation recording her medical problems at the root of these incidences, all provided to Dr. Diaz, he insisted she take the test under reasonable suspicion.

39. After this meeting, Ms. Hajje left work and visited the drug testing facility, but, feeling she had been discriminated against for her medical issues, remained in the car to review her legal options with attorneys via phone.

40. Soon, she received a message from her family informing her of a family emergency, and was forced to leave the facility immediately to locate her lost, elderly, and mentally ill mother.

41.     That evening, Ms. Maureen Shirley, Senior Manager of Human Resources, called Ms. Hajje, who explained her narcolepsy as the cause of her falling asleep.

42.     Ms. Shirley cancelled the drug test, and Ms. Hajje in turn notified Mr. Siddiqui, who stated he was happy the issue was resolved.

43.     Ms. Hajje then went to extra lengths to confirm with her sleep physician that he had submitted paperwork to her employer on July 30, 2020, renewing her FMLA benefits and certifying her need for two naps a day as an ADA accommodation.

44.     Beginning the week of September 23, 2020, and in light of her falling asleep on duty on September 14, she attempted to utilize these benefits, which were given to counteract the triggering of her narcolepsy on the job—a preventative measure such that the September 14, 2020 incident would not be repeated.

45.     However, when she attempted to use these accommodations, she was met with reproach, labeled a "patient safety concern," and, on September 28, 2020, told she was not welcome back to work until October 2, 2020.

46.     When Ms. Hajje inquired about her paperwork (sent to her employer on or around July 30, 2020), she was told her paperwork had been "found." Ms. Shirley stated that while Ms. Hajje's accommodation papers had been sent in earlier, they had not been approved until after September 26, 2020.

47. At or around noon on October 5, 2020, Ms. Shirley requested Ms. Hajje's attendance at a Zoom meeting at 1:30 p.m. with Ms. Shirley and Dr. Adam Blomberg, Regional Medical Director.

48. At this meeting, Ms. Hajje was informed that she was terminated for not reporting to the drug test.

49. Whereas previously Ms. Shirley stated that Ms. Hajje's drug test was cancelled due to her narcolepsy, at the 1:30 p.m. Zoom meeting, Ms. Shirley stated that Ms. Hajje was required to take the test within two hours of her meeting on September 16, 2020 with Dr. Diaz, and that her failure to do so was cause for termination.

50. Furthermore, Ms. Shirley accused Ms. Hajje's physician of backdating the FMLA and accommodations paperwork (despite Ms. Hajje never sending in new paperwork; she merely forwarded a confirmation that her faxed paperwork had been received by her employer on July 30, 2020).

51. Ms. Shirley stated that she would refer Ms. Hajje to Professional Resource Network (PRN), and Dr. Blomberg indicated that once Ms. Hajje finished a PRN program, she could reapply to available positions but was not permitted to reapply to the Memorial System.

52. Later that day, Ms. Shirley sent Ms. Hajje an email indicating that Ms. Hajje was required to self-report to the recommended PRN program for failing to complete the random suspicion drug test on September 16, 2020.

53. This is, again, despite Ms. Shirley's previous indications (on September 16, 2020) that the test was cancelled.

54. Following her termination from ENVISION, Ms. Hajje has attempted to find comparable employment.

55. Upon being denied time and time again without explanation, she began asking prospective employers why she was not chosen. While most would not explain, she eventually learned that ENVISION had made a note on her file.

56. This resulted in additional verification with ENVISION representative and was preventing Ms. Hajje from finding new employment.

57. Ms. Hajje filed her Charge of Discrimination with the EEOC and dual-filed with the Florida Commission on Human Relations in February 2021.

58. The EEOC conducted the pre-suit investigation and issued its Letter of Determination finding cause of a violation.

59. Thereafter, the EEOC issued Ms. Hajje its Notice of Rights, which was received and reviewed by Ms. Hajje on or after April 1, 2022.

60. As such, Ms. Hajje exhausted her administrative remedies and all conditions precedent have been satisfied.

61. Ms. Hajje has retained the services of NeJame Law, P.A. to pursue her rights against ENVISION and has incurred legal fees and costs in doing so.

## COUNT I – VIOLATION FO THE ADA

62. Plaintiff incorporates and realleges paragraphs 1 – 61 as if fully set forth herein.

63. Plaintiff is disabled as she suffers from narcolepsy, which substantially impacts her major life activity of sleep.

64. Plaintiff was otherwise qualified for the position of Anesthesiology Assistant.

65. Plaintiff is able and did perform the essential functions of her job with reasonable accommodations, including the taking of two twenty-minute naps.

66. As a result of her known disability and continued attempts to avail herself of her approved accommodations, Plaintiff was labeled a safety concern and ordered to take a drug test, which Defendant admitted that it knew she did not need.

67. Subsequently, she was informed by Defendant that the drug test was cancelled but then ultimately terminated for failing to report for the drug test.

68. In light of the Defendant's admission that the drug test was unnecessary, that Plaintiff was informed the drug test had been canceled, and that Plaintiff was labeled a safety concern following her request for an accommodation, the stated reason for her termination is pretextual.

69. As such, Plaintiff was terminated due to having a disability in violation of the ADA.

70. As a direct cause of Defendant's discriminatory termination, Plaintiff has suffered lost wages, both in the past and in the future; lost benefits, both in the past and in the future; suffered compensatory damages including emotional distress; and incurred attorney's fees and costs in bringing this action.

WHEREFORE, Plaintiff MARGAARET HAJJE respectfully requests this Court to enter Judgment in her favor and against Defendant SHERIDAN HEALTHCARE INC. for economic and compensatory damages, punitive damages, attorney's fees and costs.

## COUNT II – VIOLAITON OF THE FCRA

71. Plaintiff incorporates and realleges paragraphs 1 – 61 as if fully set forth herein.

72. Plaintiff is disabled as she suffers from narcolepsy, which substantially impacts her major life activity of sleep.

73. Plaintiff was otherwise qualified for the position of Anesthesiology Assistant.

74. Plaintiff is able and did perform the essential functions of her job with reasonable accommodations, including the taking of two twenty-minute naps.

75. As a result of her known disability and continued attempts to avail herself of her approved accommodations, Plaintiff was labeled a safety concern and ordered to take a drug test, which Defendant admitted that it knew she did not need.

76. Subsequently, she was informed by Defendant that the drug test was cancelled but then ultimately terminated for failing to report for the drug test.

77. In light of the Defendant's admission that the drug test was unnecessary, that Plaintiff was informed the drug test had been canceled, and that

Plaintiff was labeled a safety concern following her request for an accommodation, the stated reason for her termination is pretexutal.

78. As such, Plaintiff was terminated due to having a disability in violation of the FCRA.

79. As a direct cause of Defendant's discriminatory termination, Plaintiff has suffered lost wages, both in the past and in the future; lost benefits, both in the past and in the future; suffered compensatory damages including emotional distress; and incurred attorney's fees and costs in bringing this action.

WHEREFORE, Plaintiff MARGAARET HAJJE respectfully requests this Court to enter Judgment in her favor and against Defendant SHERIDAN HEALTHCARE INC. for economic and compensatory damages, punitive damages, attorney's fees and costs.

## **COUNT III - VIOLATION OF THE FMLA**

80. Plaintiff incorporates and realleges paragraphs 1 – 61 as if fully set forth herein.

81. Plaintiff was an eligible employee for FMLA benefits.

82. Plaintiff suffered from a serious medical condition that had resulted in surgery and the prior use of FMLA leave, and that required continuing treatment by a health care provider.

83. Plaintiff was qualified for her position with Defendant and was an eligible employee as defined pursuant to 29 U.S.C. § 2611(2) .

84. Plaintiff's job performance was satisfactory.

85. Plaintiff was eligible for FMLA leave as she had been employed with ENVISION for more than 12 months and had worked more than 1250 hours in the previous 12 calendar months.

86. Plaintiff availed herself of a protected right under the FMLA by applying for and taking FMLA leave.

87. Pursuant to 29 U.S.C. § 2615(a), the FMLA provides it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA, or to discharge or in any other manner discriminate against any individual for applying as practice made unlawful by its FMLA.

83. Plaintiff was instructed by Defendant to give up her current position and seek a less desirable per diem position.  She refused and subsequently was terminated from her employment with Defendant and, thus, suffered an adverse employment action because she exercised her rights under the FMLA.

84. Defendant interfered with, restrained, and denied Plaintiff's exercise of her rights under the FMLA by discharging her for taking FMLA leave.

85. As a direct and proximate result of Defendant's termination of Ms. Hajje in violation of the FMLA, and as a direct result of and in retaliation for her taking FMLA leave, Plaintiff lost wages and employment benefits and the interest thereon.

86. In terminating Ms. Hajje in retaliation for her taking qualified FMLA leave, Defendant acted intentionally, maliciously, willfully, wantonly, and with reckless disregard for Plaintiff's rights.

87. The reason articulated by Defendant was pretextual.

88. Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

WHEREFORE, Plaintiff requests a trial by jury on all issues so triable and respectfully requests the following relief against Defendant:

(i) Economic damages, including but not limited to lost wages and lost benefits;

(ii) Front Pay;

(iii) Out-of-pocket medical expenses that would have been paid by Defendant's group health insurance plan had Plaintiff's employment not been terminated inappropriately;

(iv) Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

(v) Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3); and

(vi) Such other relief this Court deems proper and necessary.

## COUNT IV – RETALIATION

89. Plaintiff incorporates and realleges paragraphs 1 – 61 as if fully set forth herein.

90. Plaintiff engaged in a protected activity by requesting and taking FMLA leave, and by filing a Charge of Discrimination complaining of disability discrimination.

91. Plaintiff was retaliated by Defendant by placing hurdles in her way of seeking comparable post-termination employment.

92. Defendant's actions in requiring additional approval when providing job verification to Plaintiff's prospective employers resulted in her being denied multiple job opportunities, constituting continued adverse employment action and/or retaliation.

93. The protected activity and the adverse employment action are not wholly unrelated.

94. As a direct result of this retaliation, Plaintiff has lost numerous job opportunities, lost wages, lost benefits, and incurred attorney's fees and costs.

WHEREFORE, Plaintiff MARGAARET HAJJE respectfully requests this Court to enter Judgment in her favor and against Defendant SHERIDAN HEALTHCARE INC. for economic and compensatory damages, punitive damages, attorney's fees and costs.2

## **REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury on all issues in this action so triable.

Respectfully submitted this 28th day of June 2022.

   /s/ *Richard W. Smith*
Richard W. Smith, Esquire
Fla. Bar No.:  0013943
NeJame Law, P.A.
189 S. Orange Ave., Suite 1800
Orlando, Florida  32801
Tel.:   (407) 500-0000
Fax:   (407) 802-1641
richard@nejamelaw.com
laurie@nejamelaw.com
civilservice@nejamelaw.com
*Counsel for Plaintiff*